# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

BRADLEY D. STANWOOD,

    Plaintiff,

vs.

DAVID STOLTS,

    Defendant.

3:17-cv-00529-RCJ-CBC

**ORDER**

Pending before the Court is Defendant's Motion for Summary Judgment (ECF No. 46). Defendant claims that he did not violate Plaintiff's Fourth Amendment rights by conducting a dog sniff and ordering Plaintiff and his passenger out of their vehicle during a traffic stop. The Court agrees: the dog sniff did not prolong the traffic stop, and the exit order was reasonable. Consequently, the Court grants the motion.

**I.    FACTS AND PROCEDURAL BACKGROUND**

The facts, according to Plaintiff, the non-moving party, are largely undisputed. (Pl.'s Mem. in Opp'n to Mot. for Summ. J. 3:15, ECF No. 48.) Construing the facts and all reasonable inferences that can be drawn from those facts in favor of the non-moving party, the facts are as follows.

Defendant, a United States Bureau of Land Management law enforcement officer, was on patrol with a Pershing County Sheriff's deputy at the Burning Man event when he observed

Plaintiff's truck towing a trailer without a license plate. Nevada law requires trailers to be registered. Nev. Rev. Stat. § 482.205 (2010). However, Oregon does not require licensure of small trailers, and Nevada exempts non-residents from local licensing laws until after thirty days in the state, given proper registration in the state of residence displayed on the vehicle. Nev. Rev. Stat. § 482.385 (2014). Based upon the trailer's lack of registration, Defendant activated his overhead lights and initiated a traffic stop.

Shortly after, Defendant exited his vehicle and walked up to Plaintiff's driver's side window. Defendant explained that he pulled Plaintiff over because his trailer had no license plate and asked for Plaintiff's driver's license, registration, and proof of insurance, which Plaintiff provided. (Pl.'s Mem. 3:22–3:23.) While waiting for dispatch, Defendant spoke with Plaintiff, who stated that he was from Oregon and that he had only been in Nevada for a short time. Defendant asked if Plaintiff had any large sums of cash, or if he had any controlled substances in his possession, including medicinal controlled substances, medicinal marijuana, recreational marijuana, cocaine, heroin, "meth," "mollie," or "simple simon" mushrooms. Plaintiff responded that he did not and laughed at the questions about large sums of cash and "meth." (*Id.* at 3:21–4:12; Ex. A to Def.'s Decl. in Supp. of Def.'s Mot. for Summ. J. 0:0–2:01, ECF No. 47.)

Subsequently, dispatch informed Defendant that the license plate on Plaintiff's truck was expired, and Defendant relayed this information to Plaintiff. However, upon further inspection, Defendant told Plaintiff that he could see from his paperwork that the truck was properly registered. During the conversation, Defendant asked, unsuccessfully, if he could search Plaintiff's vehicle, and he informed Plaintiff that he was a K-9 officer. Defendant stated that he was going to conduct a dog sniff of the air emanating from Plaintiff's vehicle, and he briefly explained the legality to Plaintiff. When he finished, Defendant ordered both Plaintiff and his passenger to exit their vehicle. As they did, Defendant asked if they had any knives or firearms

in their possession, and both responded that they did not. Defendant also inquired if Plaintiff's passenger had any drugs in her possession, and she explained that she had prescribed Vicodin in her name. At this point, the entire stop had lasted four minutes and forty-five seconds. (Ex. A, 2:01–4:45.)

When Defendant returned to his truck to retrieve his dog, Vico, he radioed Plaintiff's driver's license information to dispatch and stated that he was going "out on a free air sniff." (*Id.* 4:45–5:40.) Defendant then conduct a dog sniff of Plaintiff's vehicle while dispatch ran Plaintiff's driver's license information. Within seconds, Vico alerted to the presence of drugs by jumping onto the rear bumper of Plaintiff's truck. (*Id.* 5:40–6:10.) That alert occurred six minutes and six seconds after the initial stop. Vico again alerted to the presence of drugs moments later by repeatedly jumping up on the passenger door of Plaintiff's truck and by sitting and freezing in place by the door. (*Id.* 6:10–6:30.)

After both alerts, Defendant began walking back to his vehicle when dispatch relayed information from its check of Plaintiff's driver's license information. (*Id.* 6:54–7:27.) Based on Vico's alerts, Defendant searched Plaintiff's vehicle and found marijuana. (*Id.* 7:28–30:29.) Plaintiff was cited with drug possession charges by the Pershing County Sheriff's deputy; Defendant, however, chose not to charge Plaintiff with any additional violations and did not issue a citation. (Def.'s Decl. in Supp. of Def.'s Mot. for Summ. J. ¶ 17–18, ECF No. 47.) Based upon these events, Plaintiff filed a *Bivens* action against Defendant alleging that Defendant violated his Fourth Amendment and due process rights.

## II. DISCUSSION

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the present dispute arises procedurally on a motion for summary

judgment, its resolution is a purely legal matter. Body camera footage captured the event in question, and the facts are not in dispute. Further discussion of the standard for summary judgment is unnecessary, because no disputed material facts exist. *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999) (noting if "a motion for summary judgment is merely the conduit to bring the legal question before the district court . . . the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply."). The only questions before this Court are: (1) whether Defendant violated the Fourth Amendment and Due Process Clause by conducting a dog sniff and ordering Plaintiff and his passenger from their vehicle during a lawful traffic stop; and (2) whether Defendant is entitled qualified immunity barring Plaintiff's claims. This Court finds that Defendant did not violate the Fourth Amendment or Due Process Clause, and in the alternative, Defendant is entitled to qualified immunity.

**A. Fourth Amendment**

"[T]he Fourth Amendment bars only unreasonable searches and seizures." *Maryland v. Buie*, 494 U.S. 325, 331 (1990). It guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. The Supreme Court has clarified that a traffic stop is a seizure within the meaning of the Fourth Amendment and "is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 809–10 (1996). A traffic violation justifies a seizure and "a police investigation of that violation." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015).

Like a *Terry* stop, the length of a traffic stop "is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Id.* (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005); *Florida v. Royer*, 460 U.S. 491, 500 (1983)). The mission of a traffic stop includes "determining whether to issue a traffic ticket" and

"ordinary inquiries incident [to the] traffic stop." *Id.* at 1615 (quoting *Caballes*, 543 U.S. at 408). Those inquiries involve "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* Those inquiries are considered part the ordinary mission of a traffic stop, because they serve the same purpose "as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id.* (citing *Delaware v. Prouse*, 440 U.S. 648, 658–59 (1979); 4 Wayne R. LaFave, *Search and Seizure* § 9.3(c) (5th ed. 2012) (A "warrant check makes it possible to determine whether the apparent traffic violator is wanted for one or more previous traffic offenses.")). Justification "for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* at 1614. Unreasonably prolonging a stop "beyond the time needed to perform these tasks ordinarily violates the Constitution." *United States v. Gorman*, 859 F.3d 706, 714 (9th Cir.), *order corrected,* 870 F.3d 963 (9th Cir. 2017).

"The Supreme Court has indicated that *within* 'the time reasonably required to complete' the stop's mission, the Fourth Amendment may tolerate investigations that are unrelated to the purpose of the stop and that fall outside the scope of that mission." *Id.* at 715 (quoting *Rodriguez*, 135 S. Ct. at 1614). "The seizure remains lawful," however, only "so long as [unrelated] inquiries do not measurably extend the duration of the stop." *Rodriguez*, 135 S. Ct. at 1615 (quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)). Therefore, a police officer "may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* But on their own "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure." *Johnson*, 555 U.S. at 333.

### *1. Reasonableness of the Dog Sniff & Related Inquiries*

A dog sniff falls outside of the mission for a traffic stop as its purpose is to "detect evidence of ordinary criminal wrongdoing." *Rodriguez*, 135 S. Ct. at 1615 (quoting *City of Indianapolis v. Edmond*, 531 U.S. 32, 32 (2000)). Consequently, a dog sniff is reasonable under the Fourth Amendment only if it does not prolong "the time reasonably required to complete th[e] mission" for the stop. *Id.* at 1612 (quoting *Caballes*, 543 U.S. at 407).

The time reasonably required for a traffic stop will vary, although the Court of Appeals has held that fourteen minutes and eight minutes are not beyond the time reasonably required. *United States v. Turvin*, 517 F.3d 1097, 1101–02 (9th Cir. 2008) (stating that no hearing was necessary to "demonstrate the sensible observation that fourteen minutes is not unreasonably long for a traffic stop"); *United States v. Mendez*, 476 F.3d 1077, 1079–80 (9th Cir. 2007) (observing that an eight minute stop was not beyond the time normally required to complete a traffic stop).

Here, Defendant was justified in conducting a traffic stop. Defendant observed an unregistered trailer, which is a violation of Nevada law. This observation provided probable cause for Defendant to initiate a lawful traffic stop. Once Defendant was authorized to conduct a traffic stop, he was entitled to conduct a complete stop, which includes "ordinary inquiries incident [to the] traffic stop" such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez*, 135 S. Ct. at 1615. Even if Defendant was mistaken and Plaintiff was not in violation of Nevada law when he was pulled over, probable cause still existed, and Defendant was still justified in conducting a complete stop. Probable cause does not require accuracy or even a preponderance of the evidence. Probable cause only requires a "fair probability" under the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230, 238

(1983). Defendant easily met that standard here—he observed a clear violation of Nevada law, barring an exception. Consequently, Defendant was permitted to conduct a full traffic stop to investigate, which includes conducting a license, registration, and warrant check.

The dog sniff was reasonable because it occurred during those inspections, and it did not prolong the stop. When Defendant asked about drugs, he was waiting to hear from dispatch about Plaintiff's registration information. After he heard back, he discussed Plaintiff's registration with him and explained that he was going to conduct a dog sniff. As the conversation ended, Defendant had both passengers exit their vehicle, and Defendant then returned to his vehicle and radioed Plaintiff's driver's license information to dispatch. The dog sniff was conducted while Defendant waited for dispatch. Importantly, dispatch had not responded or completed its license and warrant check with Plaintiff's driver's license information until after Defendant had completed the dog sniff and Vico alerted to the presence of drugs. Therefore, when the dog sniff occurred the traffic stop was ongoing, and the mission was not complete.

Moreover, Plaintiff cannot sustain the argument that the dog sniff prolonged the time reasonably required to complete the stop. The Court of Appeals has declared that eight minutes and fourteen minutes are not beyond the time reasonably required to complete a traffic stop. *Turvin*, 517 F.3d at 1101–02; *Mendez*, 476 F.3d at 1079–80. In comparison, when Vico alerted to the presence of drugs, the entire stop had only lasted six minutes and six seconds. The total time for the stop here is well within times held reasonable by the Court of Appeals, and there is no evidence that Defendant delayed the stop to complete the dog sniff. Therefore, it is impossible to successfully argue that the tasks tied to the traffic stop should have already been completed but were not because of the dog sniff. Controlling caselaw forecloses that argument.

Potentially, a further argument could be made that any question or action unrelated to the mission of a traffic stop violates the Fourth Amendment if not done simultaneously with actions

that advance the mission of a traffic stop. Under this view, any unrelated inquiry must be conducted concurrently with actions that are related to the traffic stop, and any break in actions advancing the mission of a traffic stop, however short, violates the Fourth Amendment. Although this is a possible interpretation of *Rodriguez*, which defined the contours of a reasonable dog sniff, it is not plausible. In *Rodriguez*, the Court stated that a traffic stop "become[s] unlawful if it is prolonged beyond the time *reasonably* required to complete th[e] mission." *Id.* at 1612 (emphasis added). Determining what prolongs a stop by requiring strict concurrence during each second of a stop between related and unrelated inquiries is contrary to the Fourth Amendment's insistence on reasonableness. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) ("[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'"). Although the Court stated that a traffic stop may last no longer than necessary to complete its mission, and "[i]f an officer can complete traffic-based inquiries expeditiously, then that is the amount of 'time reasonably required to complete [the stop's] mission,'" *Rodriguez*, 135 S. Ct. at 1614, 1616 (quoting *Caballes*, 543 U.S. at 407), that should not be taken to mean that a stop is prolonged if strict concurrence does not exist each second between related and unrelated inquiries. If it did, an officer would violate the Fourth Amendment by asking a single unrelated question among a serious of related questions. That is not the law. *Mendez*, 476 F.3d at 1079 (holding that a stop was not prolonged after an officer completed his record checks, and while no concurrent action advanced the mission of the traffic stop, asked a driver why he had been imprisoned and if he had any weapons in his vehicle).

When discussing the duration of a traffic stop in *Rodriguez*, the Court remarked that "[a]uthority for the seizure . . . ends when tasks tied to the traffic infraction are—or *reasonably* should have been—completed." *Rodriguez*, 135 S. Ct. at 1611 (emphasis added). The Court also stated that "in determining the *reasonable* duration of a stop, 'it [is] appropriate to examine

whether the police diligently pursued [the] investigation.'" *Id.* at 1614 (emphasis added) (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985)). Therefore, the Court held that a dog sniff "become[s] unlawful [only when] it is prolonged beyond the time *reasonably* required to complete th[e] mission." *Id.* at 1612 (emphasis added). Applying that standard here, the dog sniff easily passes. The total time did not extend beyond the time reasonably required as a matter of law, and Defendant diligently pursued the mission of the traffic stop.

Even analyzing the facts under the stricter concurrence requirement between related and unrelated inquiries, Defendant's actions were reasonable. Only two events occurred between when Defendant examined Plaintiff's registration and radioed Plaintiff's driver's license information prior to the dog sniff: (1) Defendant told Plaintiff that he was going to conduct a dog sniff and explained its legality; and (2) Defendant ordered Plaintiff and his passenger from their vehicle and escorted them outside. These are the only events that could have possibly prolonged the stop under the concurrence view, since the ancillary questions about drugs were asked while dispatch was processing Plaintiff's registration and the dog sniff was conducted while dispatch was running Plaintiff's driver's license information. These are the only events between, and both were reasonable and neither prolonged the stop.

First, because the Supreme Court has sanctioned a dog sniff during a lawful traffic stop, it is reasonable for officers to momentarily to explain what they are going to do and why they can do it. Such an explanation is both reasonable and laudable. It would unreasonable to hold that police officers can conduct a dog sniff but violate the Fourth Amendment by pausing to explain what they are going to do. Such actions are also laudable as they promote respect for the law. A brief explanation of a dog sniff and its legal justification hinders the proclivity to view police disruptions as arbitrary and capricious exertions of power. Defendant's explanation here was commendable—it was clear, concise, and correct—something that all lawyers strive for.

Furthermore, while Defendant diligently pursued his traffic investigation, it is unclear that he deviated from his mission by stating that he was going to conduct a dog sniff. Although the Supreme Court has stated that a dog sniff is a deviation from the mission of a traffic stop, it is unclear whether merely explaining that an officer is *going* to conduct a dog sniff while pursuing inquires related to a traffic stop is a deviation from the stop's mission. In *Mendez*, the Court of Appeals held that officers did not deviate from the mission of a traffic stop or prolong the stop by asking unrelated questions, even while no other activities concurrently advanced the mission of the traffic stop and even after officers had completed their records check. 476 F.3d at 1079–80. There, while one officer questioned a driver during a traffic stop, a second officer conducted a records check using the driver's identification information. *Id.* at 1078–79. After the second officer finished his records check, he returned to the driver, who had been ordered out of his vehicle, to inform him that his temporary registration plate had expired. *Id.* at 1079. As he approached the driver, he heard the driver tell the other officer at the scene that he had spent time in prison. *Id.* This prompted the approaching officer to inquire why the driver had been imprisoned and to question whether he had any weapons in his car. *Id.* Although the Court of Appeals could have treated this unrelated questioning as a deviation that prolonged the mission of the stop, it did not. Instead, it held that the unrelated questioning did not unnecessarily prolong the stop and it did not view the brief questions about prison and firearms as a deviation from the stop's mission. *Id.* at 1079–80.

Here, the brief statements about Plaintiff's Fourth Amendment rights and the dog sniff occurred as Defendant was investigating Plaintiff's registration and driver's license information. Defendant did not abandon the mission of the traffic stop merely because he explained that he was going to conduct a dog sniff during his conversation with Plaintiff about Plaintiff's registration information before he walked back to his vehicle and radioed dispatch. The facts

here to support a continuous, uninterrupted mission are even stronger than those in *Mendez*, since the officers there had already completed their records check when they continued to question the driver about matters unrelated to the stop. In the present case, Defendant was in the process of reviewing Plaintiff's registration and license information when he informed him that he was also going to conduct a dog sniff. At that time, Defendant had not yet completed a records check. Therefore, even if concurrence is required barring any deviations in pursuit of the stop's mission, this Court is unable to find that Defendant deviated from his mission by explaining that he was going to conduct a dog sniff. Accordingly, this argument fails.

The second item that could be considered a deviation from the mission of the stop was the order to exit the vehicle. However, the Supreme Court has stated as a matter of law that officers can order a suspect out of his vehicle as part of a lawful traffic stop. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977). Therefore, such an order cannot be considered a deviation from the mission of a traffic stop. Whether the order was permissible is analyzed below.

### 2. *Reasonableness of the Exit Order*

In *Mimms*, the Supreme Court "held that 'once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.'" *Johnson*, 555 U.S. at 331 (quoting *Mimms*, 434 U.S. at 111 n.6). According to the Court, it is only a "*de minimis*," incremental intrusion to require a driver already stopped to exit his vehicle, and it "hardly rises to the level of a 'petty indignity.'" *Mimms*, 434 U.S. at 111. Individuals already have a reduced expectation of privacy in vehicles, and in the traffic stop context, a person who is ordered out of his vehicle is only being asked "to expose to view very little more of his person than is already exposed." *Id.* Thus, once a driver is detained during a traffic stop, it is "not a serious intrusion" to insist that a driver wait alongside his car instead of inside it. *Id.*

Therefore, given the government's significant interest in officer safety, the Supreme Court has held that officers may order citizens out of their vehicles without probable cause or reasonable suspicion during a lawful traffic stop. *Id.*

A lawful traffic stop "begins when a vehicle is pulled over for investigation of a traffic violation," and the seizure "continues, and remains reasonable, for the duration of the stop." *Johnson*, 555 U.S. at 333. Ordinarily, "the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave." *Id.* During that period an officer may lawfully order an individual out of his vehicle. That rule is not altered by inquiries unrelated to the justification for the stop.

The facts in *Arizona v. Johnson* are particularly instructive. There, the Supreme Court held that an officer was permitted to order an individual out of his vehicle to conduct inquiries unrelated to the stop. *Id.* at 333–34. After a vehicle was pulled over by officers because its registration had been suspended, one officer attempted to question a back-seat passenger. *Id.* at 327–28. The officer asked the passenger to exit the vehicle to question him about possible gang affiliations "away from the front-seat passenger." *Id.* at 328. Hence, the primary purpose of the exit order was to question a passenger about a matter unrelated to the stop. Nonetheless, the Court held that the officer's actions were reasonable, because the passenger was not free to leave, and during the traffic stop, the officer was permitted to order the passenger outside of the vehicle. *Id.* at 333–34. In this context, the Court stated that inquiries into unrelated matters on their own "do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Id.* at 333.

In the present case, the traffic stop was in progress when Defendant gave the exit order. As a result, Defendant's order was lawful. *Mimms* clarifies that the Fourth Amendment allows officers to order individuals from their vehicle during a traffic stop, and *Arizona v. Johnson*

instructs that the motive for the exit order is immaterial. *See Mimms*, 434 U.S. at 111 n.6; *Johnson*, 555 U.S. at 333–34. Although the Court stated in *Rodriguez* that safety precautions to facilitate investigation into other crimes detours from the mission of a traffic stop, that comment should be read in context. *Rodriguez*, 135 S. Ct. at 1616. There, the exit order was given after the traffic stop was complete and justification for the stop had ended. *Id.* at 1613. Logically, as the Court recognized, "the government's officer safety interest stems from the mission of the stop itself." *Id.* at 1616. So, *Rodriguez* indicates that once the mission of a traffic stop is complete an officer cannot order an individual out of his vehicle. But while a traffic stop is ongoing, an officer may order an individual out of his vehicle without probable cause or reasonable suspicion. An ongoing, lawful traffic stop is the only precondition required.

Interpreting *Rodriguez* to mean that courts must determine the real motivation of police officers behind exit orders and only uphold those orders truly motivated by officer safety conflicts with Fourth Amendment jurisprudence and incentivizes police officers to always claim that their motivation was officer safety. Crucially, the Supreme Court has decisively stated that courts are not to examine the subjective intent or state of mind of police officers. *Brigham City*, 547 U.S. at 404 ("An action is "reasonable" under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action.' The officer's subjective motivation is irrelevant." (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)); *Whren*, 517 U.S. at 813 ("[W]e have been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers"); *Graham v. Connor*, 490 U.S. 386, 397 (1989) ("[O]ur prior cases make clear" that "the subjective motivations of the individual officers . . . ha[ve] no bearing on whether a particular seizure is 'unreasonable' under the Fourth Amendment"). Therefore, Defendant's motivation for ordering Plaintiff and his passenger from their vehicle "does not matter here—even if [Defendant's]

subjective motives could be so neatly unraveled." *Brigham City*, 547 U.S. at 405. Consequently, Defendant's exit order was reasonable, and as part of a lawful traffic stop, it could not prolong the stop as a matter of law.

In sum, Defendant did not violate the Fourth Amendment. The dog sniff was reasonable, because it was conducted during the traffic stop, and it did not delay the stop. The exit order was also reasonable, regardless of Defendant's subjective motivation, because the traffic stop was ongoing when Defendant gave the order. As a result, the Court finds that summary judgment is appropriate for Defendant.

### B. Due Process

Defendant's summary inclusion of a due process violation fails as a matter of law. For a due process claim to lie here, greater protections would have to exist from search and seizure under the due process clause than those guaranteed by the Fourth Amendment. However, no such rights exist. The Supreme Court has ruled that when a specific amendment "provides an explicit textual source of constitutional protection against . . . governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham*, 490 U.S. at 395. Therefore, the Fourth Amendment defines the total extent of Plaintiff's rights against government searches and seizures.

### C. Qualified Immunity

In the alternative, the doctrine of qualified immunity bars Plaintiff's claims. The doctrine of qualified immunity shields government officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hughes v. Kisela*, 862 F.3d 775, 782 (9th Cir. 2017) (citations omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The doctrine exists to afford "government

officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley*, 475 U.S. at 341). Where a defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so the costs and expenses of trial are avoided where the defense is dispositive. *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

Resolving the issue of qualified immunity involves a two-step inquiry. First, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officers' conduct violated a constitutional right. Second, if a constitutional violation occurred, a court must further inquire whether the right "was clearly established at the time of the [officer's alleged mis]conduct." *Al-Kidd*, 563 U.S. at 735. A right is clearly established when "'[t]he contours of [a] right [are] sufficiently clear' [such] that every 'reasonable official would have understood that what he [was] doing violates that right.'" *Al-Kidd*, 563 U.S. at 741 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Id.* "If the law did not put the [officials] on notice that [their] conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 202.

Applying that test here, Defendant is entitled to qualified immunity. As discussed above, Defendant did not violate Plaintiff's Fourth Amendment rights. Even if he had, Defendant did not violate a clearly established right. Although the Supreme Court has stated that an officer may not prolong a traffic stop to investigate unrelated matters, the Court has sanctioned dog sniffs conducted during traffic stops. In the present case, when the dog sniff occurred, the traffic stop was ongoing. Thus, the only remaining question is whether the dog sniff prolonged the stop, and it is far from clear that it did. It is certainly not clear to this Court that Defendant prolonged the traffic stop by explaining that he was going to conduct a dog sniff—during a conversation about

Plaintiff's registration—before running Plaintiff's driver's license information. If that is a violation or if it is a violation to order a driver out of his car after discussing a dog sniff, it is certainly not well established. Precedent does not suggest that Defendant acted unreasonably, nor does it put officers on notice that such conduct is "clearly unlawful." If this Court cannot find a constitutional violation, it is difficult, if not impossible, to maintain that every "reasonable official would have understood that what [Defendant was] doing violates [the Fourth Amendment].' *Al-Kidd*, 563 U.S. at 741 (quoting *Creighton*, 483 U.S. at 640). Therefore, even if Defendant's actions were unreasonable, qualified immunity bars Plaintiff's claims, because this Court finds that it would not have been clear to a reasonable police officer that Defendant's conduct would violate the Fourth Amendment.

## CONCLUSION

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (ECF No. 46) is GRANTED.

Dated this 7th day of November, 2018.

_____
ROBERT C. JONES
United States District Judge